UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RIEMAN REALTY, LLC, <br> ABLE PLACE, INC., ELAINE AWAND, <br> MILTON PLEASANT, CHRISTIAN DIAZ, <br> and NANCY FIGUEROA, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SPRINGFIELD, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *     No. 17-cv-30019-MGM |

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS
(Dkt. No. 7)

August 28, 2017

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Rieman Realty, LLC ("Rieman Realty"); Able Place, Inc. ("Able Place"); Elaine Awand ("Awand"); Milton Pleasant ("Pleasant"); Christian Diaz ("Diaz"); and Nancy Figueroa ("Figueroa") (collectively, "Plaintiffs"), bring the present action against the City of Springfield ("City") on various grounds. At the heart of Plaintiffs' complaint are allegations of discrimination on the basis of disability in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq*., (Count I) ; the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, (Count II) ; and the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11, (Count IV). (*See generally* Dkt. No. 1, Compl.) Plaintiffs also allege a deprivation of their Fourth Amendment rights and rights under the FHA and ADA in violation of 42 U.S.C. § 1983, (Count III), and charge Defendant with refusing to provide reasonable accommodations in violation of 42 U.S.C. § 3604, (Count V). (*See id.*) Plaintiffs request declaratory judgment, permanent injunctive relief, damages, and attorney's fees. (*See id.*) Defendant has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiffs have failed to state a single claim upon which relief can be granted. (*See generally* Dkt. No. 7, First Mot. to Dismiss for Failure to State a Claim ("Mot. to Dismiss").) Defendant further requests Figueroa be severed from the case due to misjoinder under Federal Rule of Civil Procedure 21. (*See id.*)

## II.  FACTUAL BACKGROUND[1]

The present dispute arises from the use of three residences as sober living facilities for men in recovery from alcohol and substance abuse. The residences are located at 184 Bowdoin Street ("Bowdoin Street residence"), 186 St. James Avenue ("St. James Avenue residence"), and 710-712 Belmont Avenue ("Belmont Avenue residence") in Springfield, Massachusetts. (Compl. ¶¶ 4, 6–8.) Rieman Realty owns the Bowdoin Street residence, (*id.* ¶ 23), which is operated by Able Place, (*id.*), a

---

[1] The following facts are taken directly from Plaintiffs' complaint. Defendant attempts to proffer additional facts by attaching to their motion to dismiss various exhibits, the consideration of which would necessitate a conversion of their motion to one for summary judgment. *See Parker v. Hurley*, 514 F.3d 87, 90 n.1 (1st Cir. 2008) ("Normally, documents not included in the original pleading cannot be considered on a Rule 12(b)(6) motion without converting the motion into one for summary judgment." (citing Fed. R. Civ. P. 12(d))); *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("At the discretion of the district court, a motion to dismiss may be converted to a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling. However, if the district court chooses . . . to ignore supplementary materials submitted with the motion papers . . . , no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion." (citation omitted) (citing *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir. 1992))). The court finds the facts alleged in the complaint sufficient to resolve Defendant's motion and therefore declines to consider Defendant's exhibits or to make this motion one for summary judgment.

charitable organization with a principal place of business in Springfield, Massachusetts. (*Id.* ¶ 4.) Awand owns the St. James Avenue residence, which is also operated by Able Place. (*Id.* ¶ 24.) Figueroa owns and operates the Belmont Avenue residence, (*id.* ¶¶ 27–28), wherein she resides with her mother, Carmen Villafuerte, who suffers from dementia. (*Id.* ¶ 27.) Pleasant and Diaz are residents of the Bowdoin Street and St. James Avenue residences, respectively. (*Id.* ¶¶ 6–7.) At this stage, the court treats Pleasant and Diaz, who are recovering drug and alcohol users, as disabled within the meaning of the FHA and ADA.[2] *See S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, 752 F. Supp. 2d 85, 95 (D. Mass. 2010) ("Federal regulations define 'handicap' to include drug addiction or alcoholism that 'substantially limits one or more major life activities.'") (quoting 20 C.F.R. §§ 100.201, 100.201(a)(2))).

On December 8, 2016, seven municipal code enforcement officials arrived at the Bowdoin Street residence to inspect the property for sanitary code violations. (Compl. ¶ 33.) Upon inspection, the inspectors "immediately condemned the property and ordered it to be vacated." (*Id.*) As grounds for condemnation, the inspectors cited defective or missing smoke and carbon monoxide detectors and maintenance of an illegal basement apartment. (*Id.* ¶¶ 38, 40.) The city subsequently entered an Order of Condemnation stating "the danger to the life or health of the occupants [of the Bowdoin Street residence] is so immediate that no delay may be permitted" with respect to vacating the premises, (*id.* ¶ 34), and that the property was "unfit for human habitation." (*Id.* ¶ 35.) This was followed by an order to vacate issued December 23, 2016. (*Id.* ¶ 53.) On December 27, 2016, an official from the City of Springfield Code Enforcement Department allowed "partial re-occupancy of the first and second floors of the house," but "refused to permit more than five residents in the house, and characterized the residence as an 'illegal rooming house.'" (*Id.* ¶ 55.) Plaintiffs allege that after two additional inspections, the City "issued a notice that the Bowdoin Street residence

---

[2] The parties do not appear to dispute this contention.

complied with the Sanitary Code." (*Id.* ¶ 62.) Plaintiffs go on to allege that, "[n]otwithstanding, the issuance of the notice that the premises complied with the Sanitary Code, the [City] filed an amended petition . . . alleging that the Bowdoin Street residence violated the Sanitary Code and was unfit for human habitation." (*Id.* ¶ 63.)

"Immediately after issuing the Order of Condemnation and Order to Vacate with respect to the Bowdoin Street residence," city officials undertook an inspection of the St. James Avenue residence. (*Id.* ¶ 42.) Upon inspection, the City issued a "notice that the residence had been changed from a single family home into a rooming house in violation of Massachusetts building code," (*id.* ¶ 43), and reported missing or defective smoke and carbon monoxide detectors. (*Id.* ¶ 45.)

On or around January 20, 2017, municipal inspectors conducted an inspection of the Belmont Street residence. (*Id.* ¶ 68.) Thereafter, Defendant issued Notices of Violations based on missing or defective smoke and carbon monoxide detectors. (*Id.* ¶ 72.) Inspectors further reported the home was being used as an "illegal rooming house." (*Id.* ¶ 74.) On or around January 26, 2017, the City "commenced an action in the Commonwealth of Massachusetts Housing court . . . for, among other things, an order to compel the removal of all the residents of the [Belmont Avenue residence]." (*Id.* ¶ 76.)

On the basis of these facts, Plaintiffs assert the inspections conducted and orders issued thereafter were representative of a "campaign of harassment and intimidation against operators of sober housing in [Springfield.]" (*Id.* ¶ 32.) Specifically, Plaintiffs allege the following harassing events: (1) "searches and inspections of the residences without probable cause undertaken in a manner intended to frighten or intimidate the operators and residents of the sober houses," (*id.*); (2) "issuance of orders and taking actions designed to deprive the disabled residents of their housing," (*id.*); (3) "commencing actions in [Housing Court] to require the operators to vacate the premises or incur expensive upgrades . . . that would not be required of single family homeowners," (*id.*); (4)

4

"enforcement of the Zoning Ordinance and Sanitary Code in a discriminatory manner," (*id.*) and; (5) "failure to provide reasonable accommodations under the Fair Housing Act." (*Id.*) Plaintiffs conclude these behaviors constitute illegal discrimination on the basis of disability.

### III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Id.* Rather, a complaint "must be supported by factual allegations," (*id.*), which "raise a right to relief above the speculative level." *DeGrandis v. Children's Hosp. Bos.*, 806 F.3d 13, 16 (1st Cir. 2015). When determining whether a plaintiff has met this standard, a court "should begin by separating a complaint's factual allegations from its legal conclusions." *Ocasio–Hernández v. Fortuña–Burset*, 640 F.3d 1, 10 (1st Cir. 2011). While the "well-pleaded facts of the complaint" must be construed "in the light most favorable" to the non-movant, (*id.* at 7), a court is not required to credit a plaintiff's legal summations. *Ashcroft*, 556 U.S. at 678.

### IV. ANALYSIS

#### A. Plaintiffs' FHA, ADA, and reasonable accommodation claims (Counts I, II, and V)

Plaintiffs claim Defendant's inspections and enforcement actions violated the FHA (Count I) and ADA (Count II) by interfering with and denying, on the basis of Plaintiffs' disability, Plaintiffs' use and enjoyment of the sober living facilities in question. (*See* Compl. ¶¶ 80–93.) Plaintiffs further allege Defendant discriminated against them on the basis of disability by failing to make reasonable accommodations to "afford [Plaintiffs] a reasonable opportunity to use and enjoy a dwelling," in violation of 42 U.S.C. § 3604(f)(3)(B) (Count V). (*See id.* ¶ 105.) The court begins by

addressing Plaintiffs' FHA and ADA claims in tandem and then proceeds to an analysis of Plaintiffs' reasonable-accommodation claim.

Plaintiffs' FHA claim is grounded on § 3604 of that act, which makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1). Plaintiffs premise their ADA claim on § 12182(a) of that statutory scheme. Section 12182(a) states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).[3] The standards for establishing a *prima facie* case under the FHA and ADA are effectively the same, *see Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 n.4 (2d Cir. 2003) ("Due to the similarities between [the FHA and ADA], we interpret them in tandem." (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir. 2002)); *see also Astralis Condo. Ass'n v. Sec'y, HUD*, 620 F.3d 62, 66 (1st Cir. 2010) ("[A]uthority under the [ADA] is generally persuasive in addressing handicapped discrimination claims under the FHAA." (citation omitted) (citing *Tsombanidis*, 352 F.3d at 573 n.4)); *Middlesex*, 752 F. Supp. 2d at 114 ("The legal framework under [the ADA and FHA] is largely the same." (citing *Tsombanidis*, 352 F.3d at 573–74)), and require a plaintiff show either

---

[3] Plaintiffs' reliance on § 12182(a) appears misplaced. That section prohibits discrimination by those operating places of public accommodation. In this case, Defendant does not operate the sober living facilities in question. It appears Plaintiffs intend to invoke 42 U.S.C. § 12132, which makes discrimination by a "public entity" unlawful. (*See* Compl. ¶ 90 (stating Defendant "is a public entity under § 12131(1)"). Defendant has raised no objection on this basis. The court will therefore continue its analysis assuming Plaintiffs intended to rely on 42 U.S.C. § 12132. Section 12132 states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

disparate treatment, disparate impact, or a failure to make reasonable accommodations. *Middlesex*, 752 F. Supp. 2d at 95. The court assesses each cause of action in turn.[4]

To establish a *prima facie* claim of disparate treatment, a plaintiff must "show[] that the challenged conduct 'was due in part or whole to discriminatory intent.'" *Middlesex*, 752 F. Supp. 2d at 95 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004)); *see also Tsombanidis*, 352 F.3d at 579 (stating to establish disparate treatment, plaintiffs must show their status as recovering drug addicts and alcoholics was a "motivating factor" behind the city's allegedly discriminatory actions). That showing may be direct or indirect. *See Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 155 (D. Mass. 2007) (quoting *Caron v. City of Pawtucket*, 307 F. Supp. 2d 364, 368 (D.R.I. 2004)). The direct method "shows that the conduct was discriminatory 'without reliance on inference or presumption.'" *Middlesex*, 752 F. Supp. 2d at 96 (quoting *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Conversely, an indirect showing "is [one] which allows a fact-finder to infer that the defendant engaged in intentional discrimination." *Id.* Importantly, the circumstances alleged "'must point directly to a discriminatory reason for the . . . action.'" *Id.* (alteration in original) (quoting *Cerutti*, 349 F.3d at 1061).

Plaintiffs cannot sustain a disparate treatment claim because they fail to provide sufficient allegations—either direct or indirect—of discriminatory intent. With respect to direct proof, Plaintiffs allege no explicit references to or acknowledgment of Plaintiffs' disability by Defendants. The only verbatim statements alleged by Plaintiffs are as follows: (1) "one of the inspectors stated he was [at the St. James Avenue residence] to 'shut the [operation] down' and that Ms. Awand was an 'opportunist' taking advantage of her residents," (Compl. ¶ 48 (first alteration added)); (2) a member

---

[4] Plaintiffs only expressly allege failure to make reasonable accommodations, but the court reads Plaintiffs' complaint as fairly alleging disparate treatment and disparate impact as well. (*See, e.g.*, Compl. ¶ 32 (stating City has engaged in "campaign of harassment and intimidation" whose "purpose . . . is to deny or interfere with the housing of disabled individuals living in sober housing"); ¶ 84 ("The [D]efendant has violated the [P]laintiffs' rights . . . by  enforcing its zoning ordinance in a manner that has the effect of interfering with or denying housing to persons in recovery from alcoholism or substance abuse.").)

of the Springfield Code Enforcement Department characterized the Bowdoin Street residence as an "'illegal rooming house,'" (*id.* ¶ 55), and; (3) one inspector told residents of the Belmont Avenue facility "that they were prohibited from leaving the premises and threatened them by suggesting their property could be removed or considered abandoned if they left without permission." (*Id.* ¶ 70.) The only specific interactions alleged by Plaintiffs include: (1) a conversation in which "Ms. Figueroa explained to the city inspectors that her mother suffered from dementia and was easily frightened" and "asked the city inspectors to put away their badges and lower their voices," which "[t]hey refused to do," (*id.* ¶ 71), and; (2) an exchange between the inspectors and residents that "became so heated that Ms. Awand had to direct one or more residents to their bedrooms to de-escalate the situation and prevent a physical confrontation." (*Id.* ¶ 49.) These statements and interactions are not facially discriminatory, meaning Plaintiffs have failed to sufficiently allege direct proof of discrimination. Nor have Plaintiffs alleged sufficient indirect proof; an inference of discriminatory intent based on ambiguous conduct such as this is too tenuous. *See Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir. 1995) (finding allegedly suspect comments "at worst ambiguous" and stating, "[s]tanding alone, they are insufficient to raise an inference of . . . animus"); *Macone v. Town of Wakefield*, 277 F.3d 1, 5 (1st Cir. 2002) (stating appellants were "'entitled to all inferences which are fairly supported by the evidence, but are not permitted to build their case on . . . the gossamer threads of whimsy, speculation, and conjecture'" (internal quotation marks omitted) (quoting *Creative Envt's, Inc. v. Estabrook*, 680 F.2d 822, 830 (1st Cir. 1982))). Indeed, Defendant's statements and actions could have been made to anyone whose rented dwelling was found to be in violation of code regulations, disabled or not.

The disparate impact inquiry "focuses on facially neutral policies or practices that may have a discriminatory effect." *Tsombanidis*, 352 F.3d at 574. "'To establish a prima facie case under this theory, the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) *a*

*significantly adverse or disproportionate impact on persons of a particular type* produced by the facially neutral acts or practices." *Id.* at 574–75 (emphasis in original) (citing *City of Middletown*, 294 F.3d at 52–53). Plaintiffs do not allege the City's health and safety codes are anything but neutral polices, satisfying the first requirement of the disparate impact analysis. However, Plaintiffs fail to satisfy the second requirement because they have not adequately alleged the City's actions had a disproportionate effect on those residing in sober living facilities. It is true Plaintiffs appear to allege selective enforcement, stating the City required them "to vacate the premises or incur expensive upgrades to the residences that would not be required of single family homeowners." (Compl. ¶ 32.) But this bare allegation is insufficient to pass muster under Rule 12(b)(6). *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."). Rather, to satisfy the 12(b)(6) standard, Plaintiffs' complaint must plausibly allege able-bodied homeowners or those leasing premises to able-bodied individuals have been free of inspections and court proceedings of the type to which Plaintiffs were subject despite such able-bodied individuals or lessors operating premises not in conformance with city code provisions. Plaintiffs' complaint wholly fails to carry this burden. They have not, for example, provided any quantitative allegation of disproportionate impact, *see Tsombanidis*, 352 F.3d at 575–76 (stating "[s]tatistical evidence is normally used" in the comparable context of fair housing disparate treatment claims), or qualitative allegations thereof. *See Caron*, 307 F. Supp. 2d at 369 (rejecting FHA disparate impact claim in part because plaintiffs had not "presented any information about [the defendant's] historical treatment . . . of convalescent homes, or of how the City's treatment of [plaintiff's] home was a significant and discriminatory departure from that practice"). Because Plaintiffs have not supported their allegation that single family homeowners would have been treated differently, they fail to establish a *prima facie* disparate impact claim.

Finally, Plaintiffs claim Defendants violated their rights under the FHA (Count V) by refusing to provide reasonable accommodations as allegedly requested. To establish a *prima facie* case of failure to accommodate, a plaintiff "must show that he is handicapped within the purview of 42 U.S.C. § 3604(h)," "that the party charged knew or reasonably should have known of his handicap," and that "he requested a particular accommodation that [was] both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question." *Astralis Condo. Ass'n*, 620 F.3d at 67. As there appears to be no dispute Plaintiffs are handicapped under § 3604, the court assesses only the latter two prongs, and finds Plaintiffs have met neither. As to the first, Plaintiffs state only that "[t]he City . . . knew or reasonably should have known that prior to Ms. Awand's purchase of the St. James Avenue residence it had been used as a group home." (Compl. ¶ 44.) They make no allegations as to the other residences, and provide no explanation of how or when the City was allegedly put on notice of this fact. Plaintiffs are equally vague as to the third prong, failing to identify the specific accommodation requested or explain why that accommodation was reasonable. As such, Plaintiffs have not sufficiently stated their reasonable accommodation claim.

## B. Plaintiffs' § 1983 claim (Count III)

Section 1983 supplies a private right of action to a plaintiff whose federal constitutional or statutory rights have been violated. *See generally* 42 U.S.C. § 1983. To successfully set forth a *prima facie* claim under § 1983, a plaintiff must not only prove such rights were violated, but also that such violation occurred "under the color of state law." *Miller v. Town of Wenham*, 833 F.3d 46, 51 (1st Cir. 2016). The second of these requirements is met in this case; municipal officials clearly act under color of state law in conducting housing inspections. *See Zambrana–Marrero v. Suarez–Cruz*, 172 F.3d 122, 125 (1st Cir. 1999) (explaining a defendant acts under color of state law where his or her "'conduct occurs in the course of performing an actual or apparent duty of his office, . . . or is such

that the actor could not have behaved in that way but for the authority of his office'" (alteration in original) (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995))); *cf. Slavas v. Town of Monroe*, No. 16–cv–30034–KAR, 2017 WL 959575, at *7 (D. Mass. Mar. 10, 2017) (stating building commissioner acted under color of state law in evicting plaintiffs). At issue is therefore whether Plaintiffs have plausibly asserted their federal rights were violated. Plaintiffs premise their § 1983 claim on the theory that Defendant transgressed their rights under the FHA, ADA, and the Fourth Amendment. (*See* Compl. ¶¶ 94–99.) Because the court has found Plaintiffs have failed to state a claim for a violation of the FHA and ADA, *see supra*, no plausible § 1983 claim can be made out on these grounds. *See Harris v. White*, 479 F. Supp. 996, 1002 (D. Mass. 1979) (explaining § 1983 "creates no substantive rights" and "merely authorizes a private cause of action for violation of rights found elsewhere"). As such, the only potential basis for Plaintiffs' § 1983 claim is their contention that the City's inspections violated their Fourth Amendment rights.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that this right "shall not be violated . . . but upon probable cause." U.S. Const. amend. IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Munipal Court*, 387 U.S. 523, 528 (1967). Plaintiffs contend Defendant's "searches" of the sober living facilities violated Plaintiffs' constitutional rights because the searches were conducted "without probable cause." (Compl. ¶ 95.) Defendant's response is twofold. The City first insists it could not have violated the Fourth Amendment because probable cause is not necessary for housing inspections. (*See* Mot. to Dismiss at 15.) It further claims that, even if the Fourth Amendment's probable cause mandate does apply, the Amendment was not offended because Plaintiffs consented to the searches. (*See id.* at 16–17.)

11

Defendant's first defense is unavailing. In *Camara v. Municipal Court*, 387 U.S. 523 (1967), the Supreme Court deemed the probable cause standard applicable to searches of residences for municipal code violations. 387 U.S. at 534–35 (holding "administrative searches . . . conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees," and stating, "[i]n cases in which the Fourth Amendment requires a warrant . . . 'probable cause' is the standard by which a particular decision to search is tested"). Defendant's second argument has greater merit; *Camara* intimated a warrant issued upon probable cause is necessary for municipal code inspections only where consent is refused. *See id.* at 539–40 ("[I]t seems likely that warrants should normally be sought only after entry is refused . . . ."). While Plaintiffs have asserted the searches were unpleasant, they have not specifically alleged the City of Springfield did not obtain valid consent prior to searching the various properties. Absent such allegations, Plaintiffs have failed to allege facts sufficient to show a warrant was required and, accordingly, have not stated a Fourth Amendment claim.

### C. Plaintiff's MCRA claim (Count IV)

"The MCRA is the state analog to § 1983." *Morse v. Mass. Exec. Office of Pub. Safety*, 123 F. Supp. 3d 179, 194 (D. Mass. 2015). Like § 1983, the MCRA—specifically § 11I—is remedial and creates no substantive rights. *See Horne v. City of Bos.*, 509 F. Supp. 2d 97, 115 (D. Mass. 2007). A successful claim under § 11I must therefore plausibly allege an underlying violation of federal or state statutory or constitutional law. As with their § 1983 claim, Plaintiffs premise their § 11I claim on purported violations of the FHA, ADA, and Fourth Amendment. Plaintiffs also appear to assert a violation of their rights under Massachusetts General Laws ch. 40A, § 3.[5] To make out a claim

---

[5] Plaintiffs' complaint cites ch. 40A, § 3 on several occasions. However, they fail to clarify whether and how they intend to rely on this provision. It is not, for example, cited in Plaintiffs' formal counts and, aside from quoting the language of the statute, Plaintiffs make no argument as to its relevance. Construing the complaint, the court will treat Plaintiffs'

under § 11I, a plaintiff must prove "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that interference or attempted interference was by threats, intimidation, or coercion." *Sepulveda v. UMass Correctional Health Care*, 160 F. Supp. 3d 371, 390 (D. Mass. 2016). Applying this standard, Plaintiffs cannot sustain a claim under the MCRA based on the FHA, ADA, or the Fourth Amendment because they have insufficiently alleged interference with their rights thereunder. *See supra.*

To the extent Plaintiffs attempt to state a claim under the MCRA based on a violation of Mass. Gen. Laws ch. 40A, § 3, they also fail. Section 3 states, in relevant part,

> Notwithstanding any general or specific law to the contrary, local land use and health and safety laws, regulations, practices, ordinances, by-laws and decisions of a city or town hall shall not discriminate against a disabled person. Imposition of health and safety laws or land-use requirements on congregate living arrangements among non-related persons with disabilities that are not imposed on the families and groups of similar size or other unrelated person shall constitute discrimination.

Mass. Gen. Laws ch. 40A, § 3. (*See also* Compl. ¶ 19 (quoting statutory language).) The court construes Plaintiffs' invocation of this statutory language as an allegation of selective enforcement motivated by discriminatory animus against disabled individuals. "Liability on a claim for selective code enforcement based on improper motives depends on proof that: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as" a plaintiff's protected status, "intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Gedeon v. City of Springfield*, No. 5–cv–30062–KAR, 2016 WL 4727442, at *5 (D. Mass. Sept. 9, 2016) (quoting *Rabinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)). Here, Plaintiffs' selective enforcement claim

---

references to ch. 40A, § 3 as alleging a violation upon which Plaintiffs intend to mount an MCRA claim. Accordingly, the court will apply 12(b)(6) standards to a claim under § 3. *See infra.*

fails for the same reason its FHA and ADA claims fail, namely, because Plaintiffs have proffered no more than conclusory allegations of selective treatment and improper motive.

## V. CONCLUSION

For the foregoing reasons, Defendant's (Dkt. No. 7) Motion to Dismiss for Failure to State a claim is hereby GRANTED in its entirety and Defendant's motion to sever is DENIED as moot.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge